## Heyl Estate

*Samuel S. Logan, Jr.*, for accountant.

*Philip A. Bregy*, for executor of estate of life tenant.

*Walter J. Collins, Jr., John F. E. Hippel, Ralph C. Busser, Jr., Samuel W. Morris, William E. Lingelbach, Jr., Charles W. Woolever* and *Arthur C. Dorrance, Jr.*, for remaindermen.

*Donald J. Klein*, for Commonwealth.

SAYLOR, J., March 19, 1962.—This trust arises under the inter vivos deed dated October 21, 1927, by which Jacob E. Heyl transferred the fund now accounted for in trust upon terms which are set forth in the statement of proposed distribution and need not be repeated here.

The account has been filed because of the death of Marion W. H. Chauncey, a life tenant, on November 21, 1959, in consequence of which the trust has terminated in accordance with its provisions.

At the audit, the question was raised whether certain action of the trustee with respect to stock apportionments constituted a completed "distribution" within the meaning of Catherwood Trust, 405 Pa. 61 (1961), and whether such distribution, if completed, was in accordance with the prior Pennsylvania law of stock apportionment. Subsequent to the audit, a stipulation was submitted to the court by which all objections related to these questions were withdrawn. In view of the fact that the effect of the stipulation is to release possible claims owned by the charitable remaindermen, it is necessary to consider whether it was proper for the charities to have entered into such stipulation.

More specifically, the effect of the stipulation is to admit that the transaction which had been disputed constituted a completed distribution and that such distribution had been in accordance with the prior Pennsylvania law of apportionment. The stipulation is hereby approved because it is concluded that the disputed transaction did in fact constitute a completed distribution. Furthermore, the question as to the propriety of the apportionment raises matters of such complexity that the cost to the charities in litigating them would probably exceed the benefits which they would receive even if the litigation concluded in their favor.

With respect to the first question noted, it is concluded that the accountant made a "distribution" within the contemplation of Catherwood Trust, 405 Pa. 61 (1961), when it transferred certain amounts from its books as trustee of the Heyl Trust to its books as

executor of the will of Marion H. Chauncey, deceased. Compare adjudication in Keasbey Estate, 26 D. & C. 2d 297 (no distribution made).

The character of the book entries as a "distribution" cannot be minimized on the basis that they were mere bookkeeping entries in view of the fact that they were on the books of different legal personalities. While it so happens that the same corporation is the trustee of the trust and the executor of the will, in the eyes of the law the capacity and identity of trustee is distinct from that of executor, and the transfer from one to the other is a final and definitive transfer or distribution: Hamilton Estate, 351 Pa. 419, 424-25 (1945).

Whether the accountant made the transfer to the Chauncey Estate with a mental reservation that it was not to be a final transfer is not important. The significant fact is that it did an act which, to a reasonable man, appeared to be a definitive act. To anyone beneficially interested in the Chauncey Estate, the act of the accountant as trustee could have no other meaning than that it was a final and complete transfer. At no time did the accountant, either in its capacity as trustee or in its capacity as executor in the Chauncey Estate, inform anyone interested in that estate that the transfer was not a final and complete transfer. To the contrary, the conduct of the accountant, both in its capacity as trustee and as executor, has been such as to confirm the absolute character of the transfer. As trustee, the accountant has accounted to this court and in its account has shown the allocation of the amount in controversy to the income account, and further claims credit for the amount transferred to the Chauncey Estate (account, pages 3, 22). This can have no other meaning than a declaration that a final and absolute transfer was made to the Chauncey Estate. If it were not such a transfer, the accountant would be

guilty of misconduct in taking credit for a transfer which it had not in fact made. In its capacity as executor of the will of Marion H. Chauncey, deceased, it has paid taxes to the Federal government and to the State of New Jersey, and in both returns has included the apportioned fund in controversy. If the accountant in its capacity as executor did not believe that the fund has been finally transferred to the Chauncey Estate, it was guilty of a wrong, both with respect to those two governments in that the returns would be false, and with respect to the beneficiaries of the Chauncey Estate in that the estate would be reduced to the extent of the taxes paid on the premise that the transfer to the Chauncey Estate was final.

Therefore, at the time the transfer was made from the Heyl Trust to the Chauncey Estate, the accountant made an absolute transfer.

The transfer here involved was made by the accountant on February 6, 1961, prior to the decision in Catherwood Trust, 405 Pa. 61, which was decided on July 26, 1961. The transfer accordingly comes within the scope of the exception that the decision shall not affect prior distributions. The argument is made that the exception in the decision relates only to distributions made when "the protection of an adjudication was not contemplated", and, further runs the argument, that as the accountant contemplated that an adjudication would be eventually obtained the exception is not here applicable. This argument is without merit.

The Supreme Court, in speaking of "distributions . . . made in many estates in reliance on . . . the Pennsylvania Rule of Apportionment", was referring to distributions made with and without an audit. That "distributions" was used in this broad sense is seen from the final sentence: "In all audits now pending and henceforth, distributions shall be made under the

provisions of the Principal and Income Act of 1947." Clearly, "distributions" as employed in this last sentence, embraces awards made by adjudications upon audits of accounts, otherwise the phrase "in all audits" has no meaning. If "distributions" includes those made pursuant to awards in adjudications for the purpose of construing the last sentence, there is no reason why it does not have the same broad meaning in construing the sentence which excepts prior "distributions" made in reliance on the prior law of apportionment.

A consideration of the purpose of the exception confirms the conclusion here reached. It is manifest that it was the intent of the Supreme Court to preserve for all past transfers the stability and finality which they would otherwise enjoy but for the rule of the Catherwood Trust. The purpose of the court was that Catherwood Trust should not unsettle the past and should have prospective operation only. If awards made under prior adjudications are not protected from the rule of the Catherwood Trust, all prior adjudications and awards thereunder, at least to the extent that the right to take an appeal or obtain a bill of review would still be available, would be unsettled by that decision, contrary to the manifest intent of the court.

The word "distribution", as used in the Catherwood Trust, must be given the meaning of any kind of distribution by any authority. Sight must not be lost of the fact that the Supreme Court necessarily had to bear in mind the problems of estates throughout the Commonwealth; not only in counties, such as Philadelphia, in which there is a separate orphans' court, but also in those in which there is not such a separate court. The Catherwood Trust exception had to be phrased in such terms that it would embrace the distributions made in counties not having separate orphans' courts, in which counties, prior to this adoption of the present Supreme

Court Orphans' Court Rules, an accounting in court consisted of filing an account which was called for confirmation. If objections were made, the matter was referred to an auditor. If no objections were made, the account was confirmed and the accountant, without any court order, decree or adjudication, then distributed the estate, and no record thereof was ever made or preserved in the court. The Supreme Court in providing for practice past and present throughout the Commonwealth, therefore, must be deemed to have employed "distribution" to include every kind of transfer from a fiduciary without any distinction as to whether he was acting at his risk or under the authority of an adjudication or some form of order or decree of court.

In June 1961, the accountant as trustee purported to transfer back to the trust estate the transfer in question made to the Chauncey Estate. The fact that the retransfer has been made or that the accountant, because of its dual capacities, was able to effectuate the retransfer does not establish that the retransfer of the disputed amount from the decedent's estate back to the trust estate was a proper transfer. Having decided that the transfer to the decedent's estate was a final transfer, it follows from general principles of contract law and the law relating to payments that the retransfer was illegal. If it be assumed that the amount transferred to decedent's estate was in fact the correct amount to which it was entitled, it would follow that the retransfer was improper as a surrender by decedent's estate of part of its assets. If it be assumed that the original transfer was erroneous, it was still improper for the accountant to make the retransfer because one making a payment or a transfer as the result of his unilateral mistake of law or fact is not entitled to recover his payment or transfer because of that mistake. The mistake, if mistake there was, did

not become a mutual mistake of fact because the accountant in its dual capacities was dealing with itself. Still assuming that there had been a mistake of law or fact, in consequence of which the accountant had no right to recover such payment, it follows that the accountant was guilty of misconduct with respect to its duty as executor of the will of the Chauncey Estate, for it surrendered an estate asset which could not be recovered from it by legal proceedings.

In order to avoid any uncertainty on the point, it is here expressly declared that there is not the slightest element present of a conscious wrongdoing on the part of the accountant in its capacities as trustee and executor, and that it at all times acted in good faith and with the utmost devotion to the proper performance of its duty. This, however, does not avoid the conclusion that what it has done was not legally correct or that there was a completed distribution.

It is, therefore, concluded that it is proper for the charitable remaindermen to release their claims by entering into the stipulation, and they are commended for the co-operative spirit in which they have done so. The stipulation is approved, and together with the withdrawal by the accountant of a request for additional compensation, is attached hereto and made part of the record.

As set forth in the statement of proposed distribution, the share of income to which the Women's Southern Homeopathic Hospital, which has gone out of existence, would be entitled is now distributable proportionately to the remaining charitable beneficiaries.

By the terms of the deed of trust, the fund now accounted for passes to the accountant in its capacity as testamentary trustee under the will of the deceased settlor. At the audit, a petition was submitted requesting that the fund held under the deed of trust of 1927, hereby accounted for, be combined with the fund held

under the deed of trust executed by the same settlor on June 12, 1929. For the reasons set forth in the petition, such merger is found to be authorized by section 9 of the Estates Act of April 24, 1947, P. L. 100, relating to the combining of charitable trusts. It is not necessary that a decree be entered to that effect as an award can be made hereby to effectuate the merger. . . .

And now, March 19, 1962, the account is confirmed nisi.